Jacob Chen, Esq.
DGW Kramer LLP
One Rockefeller Plaza, 1060
New York, NY 10020
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

BENJAMIN HUYNH

                      Plaintiff,

        -against-

CODA PROJECT INC.

                      Defendant.

------------------------------------------------------------------------x

Civil Action No.:
23-cv-4849

**COMPLAINT**

       Plaintiff Benjamin Huynh ("Benjamin" or "Plaintiff"), by and through his attorneys, DGW Kramer LLP, hereby file this complaint against Defendant Coda Project Inc. ("Defendant") allege as follows:

## **INTRODUCTION**

       1.     The instant action arises from Defendant's systematic discriminatory practices, pay inequity, the creation of a hostile work environment, and open retaliation against Plaintiff because of his race, and sexual orientation and his speaking out about the company's discriminatory practices. Defendant's behavior violated Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law, the New York City Human Rights Law, and corresponding retaliation provisions of all these statutes.

## **JURISDICTION AND VENUE**

       2.     The Court has jurisdiction over this controversy as it involves a Federal Question under Title VII, and pendent jurisdictions thereto.

3. This Court also has supplemental jurisdiction over other New York State claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§1391(b) and (c), because Defendant conducts business in this district, and the acts giving rise to the claims herein alleged took place in this district.

5. On June 8, 2023, the EEOC issued and Benjamin received a Notice of Right to Sue, authorizing him to bring an action against Defendant for discrimination.

## PARTIES

6. Plaintiff was a resident of the State and City of New York at the time of the acts as alleged in this complaint, working primarily in a remote capacity. He also has worked for Defendant in New York through WeWork spaces rented by Defendant in New York, all of which are located in New York County.

7. Coda Project Inc. is a Delaware corporation, registered to do business in New York. Defendant operated in New York through the renting of multiple WeWork spaces in New York State, in New York County.

## THE FACTS GIVING RISE TO THIS ACTION

8. Benjamin is a passionate advocate for the Asian American community. He served as an Apex for Youth mentor since 2017. He served as President of the University of Pennsylvania Asian Alumni Network since 2019. As of the present time, he works for the Asian American Foundation, a non-profit dedicated to advancing equality for Asian Americans.

9. Benjamin previously worked for numerous technology companies before joining Defendant. These tech companies include LinkedIn, Stack Overflow and Kustomer, in which he held strategic roles in product marketing and product management.

10. Benjamin joined the Defendant January 4, 2021. At the time, Defendant was a newly formed company with fewer than 100 employees. Benjamin joined as a Customer Success Manager. He helped conceive the company's core go-to-market strategy which he presented companywide including to the company board in December 2021.

11. Shortly after that, Benjamin was promoted to the position of Product Specialist which was a Production Operations role. In that role, his work focused on researching and communicating customer needs to the product team.

12. In March 2022, Benjamin began formal conversations about taking on additional managerial responsibilities. As part of this, he asked about a compensation adjustment for the increased responsibilities associated with the promotion. He was told that Defendant did not make compensation adjustments based on role.

13. When Benjamin mentioned that other similarly situated, white or white presenting managers did receive compensation adjustments, his manager informed him that if he felt that he was not being paid equally, he should just quit.

14. But, as discussed in more detail later on, Benjamin learned that this denial of compensation adjustment was for Asian employees only. He learned later of a white colleague who after being promoted to the same level as Benjamin, received a compensation adjustment.

15. On May 17, 2022, Benjamin was formally promoted to a managerial role because of his outstanding work for Defendant.

16. Benjamin expected to be treated the same way as other managers, but he was not. For example, other white colleagues, including one on the same team who also was promoted received a headcount to cover their past responsibilities as an individual contributor. In contrast, Benjamin was expected to maintain all his existing responsibilities as an individual contributor

with the addition of the new managerial responsibilities.

17. On May 23rd, 2022, Benjamin had a conversation with Coda's Human Resources Business Partner (HR). In this conversation, he complained that he was experiencing discriminatory treatment in the form of exclusion from decision making, necessary information, harsher comments, and other discriminatory treatment. He noted that he was iced out and held to a different, usually higher standard. He also observed and reported that he was not the only person being subject to this disparate treatment, but that it also applied to other employees of color at Coda.

18. In that meeting, Benjamin specifically noted that he was being underpaid as to and compared against white or white presenting colleagues at a comparable level despite Benjamin's higher level of duties and responsibilities, experience, and performance.

19. He also filed a complaint with respect to his supervisor Evan Davies ("Davies"), a member of Defendant's C-Suite and who oversaw Benjamin's performance originally as Benjamin's manager's manager, and then later on as Benjamin's direct manager. Davies had been consistently speaking with Benjamin in a condescending manner and was unnecessarily combative while in meetings, which was markedly different from how he spoke to other, white employees.

20. Lastly, Benjamin spoke not just on behalf of himself but other employees also. In particular, he noted that many employees of color and also women were being harshly treated, and he was aware of some women who would cry on Zoom calls from how they were being treated.

21. HR did not appear to treat any of the issues raised by Benjamin, either those about himself or those about other employees seriously.

22. From June 2022 to July 2022, Benjamin's direct manager completed his review with input from stakeholders. Shortly after this review, Benjamin's direct manager started a role at

a different technology startup. But prior to departing, she complimented Benjamin on his skills and performance, told Benjamin that his review was "very positive", and Benjamin should be well set up for a considerable compensation adjustment.

23. Afterwards, Benjamin reported to Evan Davies directly and only to Evan Davies.

24. As mentioned earlier, Evan Davies was often hostile towards Benjamin and treated Benjamin differently than other white employees. Davies would exclude Benjamin from meetings and withhold information that would help Benjamin with his work performance.

25. In addition, while other white or white-presenting employees would be routinely offered weekly 1:1 check-in calls or meetings with Davies, Davies would not offer the same opportunity for support and advancement to Benjamin, instead only being scheduled for quarterly meetings.

26. Benjamin reported these developments to HR and communicated these concerns to no avail or support.

27. On July 13, 2022, for instance, Benjamin had a call with the head of HR, Ms. Timme, during which he expressed his concerns about Davies. He also again raised the issue of unequal pay and discriminatory behavior. Ms. Timme responded hostilely to the issues Benjamin raised, suggesting that if the discrimination was too much, he should just leave the company.

28. The one and only seemingly positive response Benjamin received from the company was in late summer of 2022 when he was contacted by the C-Suite executive Shishir Mehrotra who scheduled a call with Benjamin. During the call, Mehrotra acknowledged being made aware of the issues Benjamin raised, and for the first time ever, said that the company was working on addressing them and asked Benjamin to be patient.

29. However, that turned out not to be the case.

30. On August 23rd, 2022, Davies told Benjamin that his team would be disbanded, and that Benjamin would be demoted. When asked why, Davies made vague criticisms of him, citing common discriminatory tropes about Asian American workers, accusing Benjamin of having "weak leadership skills." Davies was unable to provide any metrics or examples in support of this "observation." Davies simply said that "some people" were not a good fit for leadership roles and that he felt Benjamin was simply better suited to be a worker.

31. These comments by Davies were reflective of the bamboo ceiling culture that appeared prevalent at Defendant, routinely applied to East and Southeast Asian Americans, which was willing to hire such individuals at the ground level but was generally unwilling to promote them into management with a few token exceptions.

32. Notably, the feedback Benjamin received from others including his primary stakeholder, the CPO, had been highly positive. The CPO had advised that Benjamin's team's service, aligning the product roadmap to customer needs, was performing good and valuable work for the company.

33. Benjamin asked for his full written review and at first Davies refused to provide it to him. Eventually after several requests Davies did and to Benjamin's shock, Davies had been developing a performance improvement plan ("PIP") which is ordinarily reserved only for poor performing employees, or in some instances a tool used by companies to create a pretext prior to termination.

34. This news was especially shocking because the written review which Davies eventually turned over was exceptionally positive. One review for example stated: "Ben is such a great person to manage. He's thoughtful, hardworking, challenges you to think differently, and is very transparent in his needs. Topics that many struggle to bring up, Ben does and he does it in a

way that gets you to really think about the topic in a variety of different ways. I grew as a manager through managing Ben and that is something I will always be appreciative of."

35. Despite the fact that Ben had been positively reviewed by other people, in his meeting with Davies insisted on imposing a PIP and threatened Ben with demotion.

36. Benjamin complained about the unfair treatment he was being subjected to by Davies to HR, noted the stark disparity between his actual performance review versus what Davies was pretending his performance review was, and how he was being both discriminated against and apparently retaliated against for bringing up subjects of discrimination and animus.

37. On November 29, 2022, after nearly two years of employment, Benjamin was fired.

38. Benjamin was informed that Defendant was undergoing a "reorganization", but the only people "reorganized" was Benjamin and one other person who had been working under him.

39. Benjamin was "reorganized" into termination by Kenny Mendes who was another member of Defendant's C-Suite. Mendes repeatedly emphasized that the "reorganization" had nothing to do with performance. Mendes further claimed that the leadership team had "looked for another role" at the Defendant but simply despite their best efforts just "could not find one."

40. It should be noted that Benjamin then looked into it and discovered that the company in fact had a vacancy for Product Marketing with duties and responsibilities eerily similar to the role Benjamin had worked in, and also for which Benjamin would have been ideally suited given his experience as a Product Specialist and also related experience at prior companies.

41. As of May 15, 2023, this position still remained open.

42. As a result of being "reorganized" out of the company, Benjamin was severely humiliated, and his wrongful termination, along with the half year of hostile work environment, caused significant stress anxiety, and other physical symptoms.

43. Benjamin attempted to look for new work after his termination but had difficulty finding a new comparable position in the technology industry, especially because Defendant had put Benjamin on a PIP before Benjamin's termination and because of baseless discriminatory determination by Davies that Benjamin lacked nebulous "leadership qualities."

44. Benjamin has since taken up work with the Asian American Foundation, a non-profit dedicated to advancing equality for Asian Americans, which paid significantly lower than what he had been paid while working for Defendant.

**FIRST CAUSE OF ACTION: NEW YORK EXECUTIVE LAW**

45. Plaintiff repeats and realleges each and every allegation contained in paragraphs above as if repeated and incorporated herein.

46. In summary, Plaintiff was the victim of disparate treatment on the basis of his ethnicity. He was paid less than other similarly qualified white or white-presenting male colleagues. He was afforded fewer resources compared to other managers who were at a similar level but were white or white-presenting. He received harsher performance reviews as compared to other similarly situated white or white-presenting male colleagues. He received fewer opportunities for advancement and less face time and regular meeting opportunities with senior management than other similarly situated white or white-presenting male colleagues. He received vague and nebulous demerits, was demoted, and was put on a PIP because of his ethnicity. And he was eventually terminated with such termination being pretextually labeled as a layoff but was in reality a termination Plaintiff was subjected to in part because of his ethnicity.

47. This issue was endemic at the company, and despite many East Asian American employees, there were almost no East Asian American managers or supervisors at the company.

48. In general, people of color and women were largely excluded from management or

supervisory roles in the company or were afforded less pay than their white and white-presenting male colleagues.

49. By reason thereof, Defendants has violated New York Executive Law § 296, which makes such discrimination illegal. As a direct result thereof, Plaintiff has suffered economic damages in an amount to be determined at trial.

**SECOND CAUSE OF ACTION: NYC ADMINISTRATIVE CODE**

50. Plaintiff repeats and realleges each and every allegation contained in paragraphs above as if repeated and incorporated herein.

51. In summary, Plaintiff was the victim of disparate treatment on the basis of his ethnicity. He was paid less than other similarly qualified white or white-presenting male colleagues. He was afforded fewer resources compared to other managers who were at a similar level but were white or white-presenting. He received harsher performance reviews as compared to other similarly situated white or white-presenting male colleagues. He received fewer opportunities for advancement and less face time and regular meeting opportunities with senior management than other similarly situated white or white-presenting male colleagues. He received vague and nebulous demerits, was demoted, and was put on a PIP because of his ethnicity. And he was eventually terminated with such termination being pretextually labeled as a layoff but was in reality a termination Plaintiff was subjected to in part because of his ethnicity.

52. This issue was endemic at the company, and despite many East Asian American employees, there were almost no East Asian American managers or supervisors at the company.

53. In general, people of color and women were largely excluded from management or supervisory roles in the company or were afforded less pay than their white and white-presenting

male colleagues.

54. Prior to commencing this civil action, Plaintiff served a copy of this complaint upon the city commission on human rights and corporation counsel on _____.

55. By reason thereof, Defendants has violated NYC Administrative Code §§ 8-502 and 8-107 et seq.  As a direct result thereof, Plaintiff has suffered economic damages in an amount to be determined at trial.

**THIRD CAUSE OF ACTION: VIOLATIONS OF TITLE VII**

56. Plaintiff repeats and realleges each and every allegation contained in paragraphs above as if repeated and incorporated herein.

57. In summary, Plaintiff was the victim of disparate treatment on the basis of his ethnicity. He was paid less than other similarly qualified white or white-presenting male colleagues. He was afforded fewer resources compared to other managers who were at a similar level but were white or white-presenting. He received harsher performance reviews as compared to other similarly situated white or white-presenting male colleagues. He received fewer opportunities for advancement and less face time and regular meeting opportunities with senior management than other similarly situated white or white-presenting male colleagues. He received vague and nebulous demerits, was demoted, and was put on a PIP because of his ethnicity. And he was eventually terminated with such termination being pretextually labeled as a layoff but was in reality a termination Plaintiff was subjected to in part because of his ethnicity.

58. This issue was endemic at the company, and despite many East Asian American employees, there were almost no East Asian American managers or supervisors at the company.

59. In general, people of color and women were largely excluded from management or supervisory roles in the company or were afforded less pay than their white and white-presenting

male colleagues.

60. Prior to commencing this civil action, Plaintiff filed a complaint with the EEOC and received a right to sue from the EEOC on June 8, 2023.

61. By reason thereof, Defendant has violated Title VII of the Civil Rights Act. As a direct result thereof, Plaintiff has suffered economic damages in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION: RETALIATION**

62. Plaintiff repeats and realleges each and every allegation contained in paragraphs above as if repeated and incorporated herein.

63. Plaintiff was the victim of retaliation by Defendant because of his complaints about discrimination by Defendant, not only against Plaintiff, but also broader widespread discrimination by Defendant against other employees. The retaliation Plaintiff was subjected to included being denied opportunities and advancement, being wrongfully put on a PIP, being negatively treated by his direct supervisor, being demoted, being intentionally set up for failure, and being "reorganized" out of the company.

64. Defendant's conduct violated the anti-retaliation provisions of Title VII, the New York State Human Rights Law, and New York City Human Rights Law. As a direct result thereof, Plaintiff has suffered economic damages in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION: ATTORNEYS FEES**

65. Plaintiff repeats and realleges each and every allegation contained in paragraphs above as if repeated and incorporated herein.

66. Plaintiff, as a result of the wrongful and illegal discriminatory and retaliatory

conduct by Defendant was forced to incur considerable legal fees associated with the prosecution of this action.

67. As a direct result thereof, Plaintiff has suffered economic damages in an amount to be determined at trial and is entitled to payment of his legal fees associated pursuant to the corresponding provisions of Title VII, the New York State Human Rights Law, and New York City Human Rights Law.

**WHEREFORE**, with respect to each cause of action, Plaintiff demands judgment as follows:

I. On all causes of actions, in an amount to be determined at trial;

II. Attorney's fees; and

III. Such other and further relief as the court deems just and proper, together with the costs and disbursements of this action.

Dated: New York, New York
June 8, 2023

Respectfully submitted,
DGW Kramer LLP

By: /s/ Jacob Chen
Jacob Chen, Esq.
Attorneys for Plaintiff
One Rockefeller Plaza, 1060
New York, New York  10020
E-mail: jchen@dgwllp.com